Breaux vs. Negrotto, Jr.

## No. 10,677.

### GUSTAVE A. BREAUX VS. DOMINGO NEGROTTO, JR.

Notice to the delinquent tax payer is an essential prerequisite to a valid sale of his property for taxes.

There is no law preventing the State from having property adjudicated to her at a tax sale.

Act 80 of 1888 is a curative and remedial statute, and is therefore constitutional. If it exceeds legislative power in some respects, it is to be confirmed so far as it does not violate the constitutional right of the property holder. Under constitutional direction, it is discretionary with the Legislature to provide the time, and manner of notice, but it can not dispense with notice altogether. Act 80 of 1888 therefore does not cure the defect of the entire absence of notice.

The rule in construing such statutes is, that the Legislature may make the tax deed conclusive evidence of compliance with every requirement which the Legislature might, in the original exercise of its discretion, have dispensed with, and may validate retrospectively the proceedings which they might have authorized in advance.

Where the plaintiff in a suit to annul a tax sale pleads the prescription of the tax, a tender is unnecessary. And also when the amount is indefinite and uncertain.

In order to plead the prescription of three years in bar of the action to annul a tax sale under Section 5 of Act 105. of 1874, the defendant must be in possession of the property. When such possession is shown, it puts the original owner

Breaux vs. Negrotto, Jr.

under notice of the necessity of bringing his action, and if he fails to bring it within the prescribed time, the bar of the statute applies.

Where property which is delinquent for taxes is kept on the assessment rolls, and the tax for subsequent years is regularly assessed to the original owner and paid by him, it would be against justice and good conscience for the State, without notice to the owner, to sell the property and have it adjudicated to the State.

In case an appellee prays for a rule on the appellant to show cause why a decree should not issue, on the ground that the judgment and decree of this court has become final because appellant's motion for a rehearing was unaccompanied by a *printed* statement of points and authorities on which same is founded, in obedience to Rule IX of this court, it is a sufficient answer for the appellant, to state that, for a rehearing, he *solely* relied upon the points and authorities cited in his original briefs, on file, and upon printed briefs to be filed by an *amicus curiæ* to whom an extension of time had been granted for that purpose. In answer to a rule filed by appellant's counsel, pending the determination of the appellee's rule, and his own application for a rehearing, it is a sufficient answer for the appellee, to state this relief is not appropriate at this time; that such an application *must* be made on the original hearing of the appeal in this court; and that such a rule should have been thereon contradictorily taken, and not *ex parte* as in this case.

3. Having made an alteration in a previous decision, with which the opinion in the instant case was manifestly in conflict, thus harmonizing the two, there is no occasion for the allowance of a rehearing.

| | |
|---|---|
| 43 | 426 |
| 112 | 411 |
| 43 | 426 |
| 115 | 400 |
| 115 | 1075 |
| 43 | 426 |
| 121 | 876 |

A PPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*Bayne, Denegre & Bayne* for Plaintiff and Appellee:

Tax sales are proceedings *in invitum.* The power of the tax collector is a naked statutory power, which is strictly construed. He has only such power as the law confers, and no other. The statute is his only warrant to sell. Stafford vs. Twitchell, 33 An. 528; Workingmen's Bank vs. Lannes, 30 An. 871; Cooley on Taxation, pp. 469 and 481; Burroughs on Taxation, p. 286, Sec. 112.

A sale not preceded by advertisement in the exact manner and form, or for the full length of time prescribed by law, is radically defective. Renshaw, Cammack & Co. vs. Imboden, 31 An. 661; Person vs. O'Neal, 32 An. 228; Blackwell on Tax Titles, Section 430 *et seq.*, 5th edition; Delogny vs. Smith, 3 La. 418; Burroughs on Taxation, pp. 291, 292; Cooley, p. 482; Desty on Taxation, p. 882.

Act 80 of 1888 requires that property sold thereunder should be advertised for thirty full days; advertising five times in thirty days is not a compliance with the law, and a sale preceded by such advertisement is void.

A tax title should by recitals of fact show upon its face a compliance with the law. A tax title which contains mere general recitals and conclusions of law is not such as is contemplated by the statute, and not entitled to the character annexed by the law to deeds drawn up as the law requires.

Act 80 of 1888 provides only for the sale of property belonging to the State; if the title to the State is void, it can make no valid transfer. Oil Works praying for monition, 34 An. 255; Garig vs. Bush & Levert, 35 An. 1109; Gibson vs. Hitchcock, An. 209; Denègre vs. Francez & Gerac, 35 An. 952.

Breaux vs. Negrotto, Jr.

The State tax of 1881 is null and void because wanting in equality and uniformity as provided in Article 203 of the Constitution.

The tax of 1881 was prescribed when the sale for that tax is said to have taken place, and the sale is, therefore, void.

Act 77 of 1880 governed the sale of property for taxes of 1881, and this act giving no authority to bid property in for the State, the tax collector had no authority to purchase in the name of the State, and the adjudication was therefore void. The provisions of former laws permitting purchases by tax collectors in name of the State were all repealed in so far as the parish of Orleans is concerned by Act 95 of 1877, and the amendatory Act of 1878.

Article 210 of the Constitution, and the laws passed in pursuance thereof, requiring personal notice to the owner other than by advertisement, the giving of such notice was an essential prerequisite to the sale to the State, which is void for want of such notice. Villey vs. Jarreau, 33 An. 296.

The State having continued to assess property and collect taxes thereon after the sale to her, is estopped from claiming ownership, and so is her transferee. Clark vs. Hastings, 2 Curtis, 439.

The law contemplates that the purchaser at a tax sale, as well as the State, shall take possession of property bought, and taking possession is intended as, and is, the only notice afforded to the owner of the sale, and is therefore essential and can not be dispensed with.

Prescription only begins to run from this taking of possession. Barrows vs. Wilson; McDougall vs. Molezun.

Act 80 of 1888, in so far as it undertakes to cure and validate prior assessments and give a certain character to deed as evidence, is unconstitutional, no such object being expressed in the title.

It is also unconstitutional in so far as it declares good and perfect titles absolutely void; this is a taking of property without due process of law, in contravention of the Fifth Amendment of the United States Constitution.

The provisions of the Constitution (Article 210) that deeds made by tax collectors shall be *prima facie* evidence is exclusive, and the Legislature can not make such deeds conclusive.

*Charles F. Claiborne* for Defendant and Appellant.

*Walter H. Rogers*, Attorney General, and *Wynne Rogers*, as *Amicus Curiæ;* and *Moise & Titche*, as *Amici Curiæ*, on the same side.

The opinion of the court was delivered by

McENERY, J. This is a suit to annul a tax sale.

The tax-collector, in pursuance of Act 77 of 1880, and Act 96 of 1882, advertised for sale the following property for unpaid taxes of 1881, assessed in the name of Alexander Delhomme, and in the absence of any bidders according to the provisions of said Act No. 96 of 1882 it was adjudicated to the State:

Two lots of ground in the first district of the City of New Orleans, in the square bounded by Magazine, Race, Constance and Orange streets, adjoining each other and measure each 27 feet front on Magazine street by 125 feet in depth between parallel lines, according to a plan by Benjamin Buisson, surveyor.

On the 13th day of June, 1889, the property was adjudicated to the defendant, Negrotto, by the tax-collector, under Act 80 of 1888.

The plaintiff claims that the sale of his property as aforesaid was an absolute nullity for the following reasons:

1. The tax-collector could not sell to the defendant, Negrotto, without statutory warrant, and this statutory warrant, Act 80 of 1888, requires that the property be advertised thirty days, whereas the tax-collector only advertised it five times in thirty days.

That the advertisement for full thirty days was a condition precedent to the sale, was intended as notice to protect petitioner, and the attempt to sell his property without such advertisement, is a taking of his property without due process of law, in violation of the fifth amendment to the Constitution of the United States, the Statute providing that such advertisement shall be a full, complete notice to all persons and parties in any wise interested in said property, and no other notice shall be required, and the same shall operate as a complete citation to all.

That the act asssailed falsely recites that the property has been advertised thirty days, and is not such an act as is called for by law, containing general recitals and conclusions of law instead of recitals of fact, and is not entitled to the character annexed by the law of 1888, to such acts as are passed in compliance with its provisions. And the recitals in the act operate as a fraud upon petitioner's rights.

2. That Act 80 of 1888, if constitutional, provides solely for the sale of property belonging to the State, and as the State has no title to petitioner's property, it did not come within the purview of that act, and the tax-collector had no authority in law to sell.

3. The State had no title to petitioner's property because:

(a) The tax of 1881 was, and is null and void, because not equal and uniform as provided by Article 203 of the Constitution.

(b) That the tax of 1881 was prescribed at the time of the pretended adjudication to the State.

(c) Act 77 of 1880, which govern the assessments, levy and collec-

tion of the tax of 1881, as set forth in the act of sale to the State, did not authorize the tax-collector to purchase in the name of the State, and therefore his act in so doing was without warrant in law and void.

(d) The Constitution and laws in force at the time required notice to the tax-payer before his property could be sold, and no notice was given, and therefore the tax-collector was without warrant in law to seize and sell.

(e) The law provides that property adjudicated to the State shall only be assessed for one year thereafter in the name of the owner, and must be assessed upon a separate roll. After that time it contemplates that the tax-collector shall take possession and collect revenues, thus providing a means of notice to the tax-payer that his property has been sold so as to allow him full opportunity to redeem. That nothing of the kind was done in this case, but the State exacted and collected taxes, and at all times treated and dealt with the property as that of petitioner, and was and is estopped to set up title in herself.

4. Act 80 of 1888 is unconstitutional in so far at least as it undertakes to cure prior assessments and deeds, and to give a certain character to deeds as evidence, because no such purpose is stated in its title, and because it is not in the power of the Legislature to validate deeds absolutely void, and transfer a man's property to the State by legislative declaration, such law being obnoxious to the fifth amendment of the Constitution of the United States and to several articles of the Constitution of Louisiana.

5. Act 80 of 1888 in so far as it provides that deeds of sale thereunder shall be conclusive evidence is in conflict with Article 210 of the Constitution, which declares that tax deeds shall only be *prima facie* evidence.

The defendant filed exception of no cause of action, and want of tender of the price paid by Negrotto, and pleaded the prescription of three and five years.

These were overruled by the District Court.

Defendant answered, alleging the State's purchase at tax sale in 1884 of the property assessed to Delhomme, and the purchase by him on June 13, 1889, under Act 80 of 1888; that his title is perfect and prays for recognition thereof, and judgment for revenues, or in

the alternative, for amount paid by him for his purchase at the tax sale, which was $110.

There was judgment for the plaintiff, and the defendant appealed.

The petition discloses a cause of action, and the want of tender of the price paid by the defendant, Negrotto, has no application in this case.

The plaintiff in his petition denies that he owed the tax for which his property was sold. He claims that the tax had been extingished by the prescription of three years. The article of the Constitution requiring that "no sale of property for taxes shall be annulled for any formailty in the proceeding until the price paid, with 10 per cent. interest be tendered to the purchaser," certainly does not intend that the party bringing the suit to annul the sale because of the non-existence of the tax, should be required to do that which would defeat the object of the suit. A tender necessarily requires the existence of the tax. In this case also, the plaintiff was not certain to whom, and for what amount the tender should be made. If his plea of prescription is not maintained, and his other allegations as to the nullity of the proceedings should prevail, he certainly owes Negrotto nothing; but he owes to the State the amount of the tax only, assessed against him for the year 1881.

In the case of Guidry vs. Broussard, we said: "If a tender was necessary it would have been difficult if not impossible to tell the precise sum that was to be tendered. To entitle a party to insist on a tender, the amount must in legal contemplation be made to appear definite and certain, so that the act to be done and the duty performed, if required, might be intelligently performed. We had occasion to pass upon this point in the case of Miller vs. Montague, 32 An. 1290, recently decided, in which we held that, under a state of facts relating to the want of certainty and confusion in assessment, and the consequent uncertainty in the amount, if any, to be tendered, similar to those here presented, that a tender was not necessary." 32 An. p. 925. Stafford, Executor, vs. Twitchell, 33 An. p. 520.

Neither the State nor the defendant took possession of the property. It remained continuously in possession of the plaintiff and Delhomme, from whom the plaintiff purchased.

The rents and revenues were enjoyed by them. No demand or any attempt was ever made by the State to obtain possession of the property. On the contrary, it only remained in the possession of the

plaintiff, but it was carried on the assessment rolls in the name of the plaintiff, assessed to him, and the taxes collected from him. There was no adverse possession which put the plaintiff under notice of the necessity of bringing his action, which failing to do within the prescribed time, the bar of the Statute would apply. Barrow vs. Wilson, 39 An. 409.

The taxed property was adjudicated to the State for the tax assessed against it in 1880, and in pursuance of Sections 49, 50, 51, 52 of Act 96 of 1882. The tax-collector's deed shows that the advertisement and offerings were duly made within the time necessary to prevent prescription. The tax for 1881, therefore, had not prescribed when the property was adjudicated to the State, June 14, 1884.

If the adjudication was legal and valid, the time for redemption having passed, the divestiture of the title of the plaintiff was complete. He has no interest therefore in attacking Act 80 of 1888. It is immaterial to him in what manner the State disposes of her property.

In Martinez vs. State Tax-collector, 42 An. 677 (7 So. Reporter, 796), we said: "Conceding that the taxes were extinguished by confusion when the State, in the absence of bidders, purchased the property at the sale under Act 96 of 1882, no reasons are urged or can be urged why the State, being the owner of the property, could not sell the same and fix the price and impose such conditions on the sale as she deemed fit and proper. There is no restriction that can be placed upon the conditions which she may impose upon the sale of her property."

In the same case we said: "There is in the Constitution no prohibition on the State to purchase property either at private, public or tax sale."

This case disposes of both objections of plaintiff, the attack on Act 80 of 1888, and the right of the State to purchase at tax sale.

The Act No. 80 of 1888 concerns the plaintiff only in its effects as a curative statute.

In the matter of Orloff Lake, 40 An. p. 142, and in re Douglas, 41 An. 765 (6 So. Reporter, 675), we held that such statutes were constitutional, and in re Douglas, that, if they exceeded legislative power in some respects, they are to be enforced so far as they do not

violate the constitutional right of the property holder, and restrained so far as they do.

Article 210 of the Constitution says   *   *   *   " after giving notice to the delinquent in the manner to be provided by law (which shall not be by publication except in case of unknown owner), advertise for sale the property on which the taxes are due, in the manner provided for judicial sales, and on the day of the sale he shall sell such portion of the property as the debtor shall point out."

This article refers to sales of property for taxes, and can have no application to the property which the State sells and to which she has title, whether acquired at tax sale or otherwise.

But if the State acquired no title to plaintiff's property, because of radical defects in the tax proceeding, she would convey no title to the defendant under the sale made in pursuance of Act 80 of 1888. Guidry vs. Broussard, 32 An. 926; Gibson vs. Hitchcock, 37 An. 209; Baton Rouge Oil Works vs. Dundas, 34 An. 255; Denégre vs. Gerac, 35 An. 952; Gatlin vs. Hutchinson, 36 An. 350; Garic vs. Bush & Levert, 35 An. 1109.

The plaintiff alleges that no notice was served on him in pursuance of the constitutional provision, and Section 35 of Act 77 of 1880. Article 210 of the Constitution requires notice to be served on the delinquent tax payer, in the manner to be provided by law.   Section 35 of Act 77 of 1880, provides that notice shall be left at the residence or place of business of the tax debtor and delinquent, or mailed to him by registered letter.

It is contended by defendant and the tax-collector that the marginal note on the assessment roll furnishes full and conclusive proof that the notice was served as directed by said section.

It is only *prima facie* evidence, and can be disproved in a judicial proceeding.   This certificate of the tax-collector, however, applies only to unknown owners, who receive notice by publication, as provided for in Section 36 of the Act.

If the notice provided for in Sections 49 and 50 of Act 96 of 1882, applies to this case, the notice therein is by postal card, but there is no provision made for the evidence of its having been mailed, to be preserved by the certificate of the tax-collector.   But we think the evidence is conclusive that no notice of any kind was ever served on the plaintiff.

Under the Constitutional direction it was discretionary with the

General Assembly to provide the mode and manner of the notice. But the Constitution having provided for the notice, it becomes an essential prerequisite to the sale of the property of the delinquent tax payer.

The tax deed to the State, in pursuance to the adjudication to her under the provisions of Act 96 of 1882, recites that the notice to the delinquent had been given in strict compliance with law. The deed is evidence of a *prima facie* valid sale. Article 210 of the Constitution. It can be disproved as to the want of one of the essentials to a tax sale. These essentials have been enumerated *in re* Lake, and *in re* Douglas, heretofore referred to, and notice as required by the Constitution, may be added to them.

*In re* Lake we held that the provisions of Section 3 of Act 82 of 1884 " necessarily imply that all the jurisdictional prerequisites have been complied with, and if in point of fact they have not, the tax title does not preclude an action of nullity based on non-compliance therewith."

*In re* Douglas we said: " Broadly stated, the doctrine is that the Legislature may make the tax deed conclusive evidence of compliance with every requirement which the Legislature might originally in the exercise of its discretion have dispensed with." As stated by Judge Cooley: " The general rule has often been declared that the Legislature may validate retrospectively, the proceedings which they might have authorized in advance." Cooley on Taxation, 222.

Section 4, of Act of 1888, is similar to Section 3, of Act 82 of 1884. The Legislature, having discretionary power to provide the mode, manner and time of notice, can, by remedial legislation, cure such defects as arise from defective service. But it can not dispense with notice altogether. Hence it can not by remedial legislation supply the absence of notice, which the Constitution requires shall be given to the delinquent tax-payer.

The Constitution, and Acts No. 77 of 1880, and No. 96 of 1882, require a notice to be given to the tax delinquent. No notice was given. It was an essential prerequisite to the sale of the property. As Act No. 80 of 1888 does not cure the want of notice, and as a remedial statute does not apply to the case at bar, the law as stated in Stafford, Executor, vs. Twitchell, is directly applicable. *In re* Douglas, 41 An. 765 (6 So. Reporter, 675).

In that case this court said: "Amongst the conditions precedent

Bréaux vs. Negrotto, Jr.

to sell, those the object of which is to charge the taxpayer with notice, actual or constructive, of the proceeding, whether in the assessment or collection of taxes, are the ones universally regarded as mandatory, and of which the most punctillious performance is required. * * * Actual knowledge, however, clearly brought home to the tax payer, can not dispense with the necessity of such notices in conformity with law, and no consent to their waiver can in any case be implied." 33 An. 529.

The property remained continuously in the possession of the plaintiff, and he regularly paid the taxes on it. He has paid all taxes to date, City and State, with the exception of the tax due the State for the year 1881.

The tax payer may have been induced to believe that his tax, for some reason known only to the officer, may have been deferred for collection, because of some fault in assessment, or for some other cause. Or he may have been confirmed in his impressions that he had paid it. The latter would seem to be the belief in this case, as the plaintiff had paid all of his taxes, and was under the impression, and believed that he had paid the tax of 1881.

Had the State taken possession of the property and collected the revenues within the year of redemption, the plaintiff, by the adverse possession, would have been informed that his property had been expropriated for taxes. He would not have remained inactive, and permitted his rights to the property to have been imperilled. This is, at least, his testimony, when he says, had he received notice of the tax he would have promptly paid it.

It would be against justice and good conscience to allow the State to asert ownership under such a state of facts   34 An. 361; 28 An. 462.

There are some other reasons alleged by plaintiff why the tax sale should be annulled. They are not of such importance as to require notice.

Judgment affirmed.

Bermudez, C. J. concurs in the decree on the ground of want of notice.

Watkins, J., concurs for separate reasons.

Breaux, J., takes no part.

## CONCURRING OPINION.

WATKINS, J.   I rest my concurrence in the opinion herein rendered on the ground that the sale to the State was not preceded by the notice provided by Article 210 of the Constitution, regarding it as such an *essential prerequisite* for the exercise of the taxing power, as is specified in Orloff Lake, 40 An. 147, because there can be no " statutory warrant" for a tax sale, which has not been preceded by such notice.

This view is perfectly consonant with the opinion we expressed in the Douglas case, 42 An. 765.   No statute or decision of this court could read that precept out of the organic law.

But, in as much as the defendant has interposed a plea of three years' prescription, under the law of 1874, it is necessary that I should state my views *precisely* in regard to it.

In Smith vs. City, 43 An. *post*, we hold that this period of prescription commences to run from the *date* of the sale, as expressed in the statute of 1874.   And we further expressed the opinion that in *this particular* class of tax titles, *possession* by the State, other than that imported by the registry of her authentic title, was not required by the Statute of 1882, which capacitated her to become a purchaser; and *possession* by a purchaser at a tax sale, was not made an essential of this plea of prescription by the Act of 1874.

But the revenue law of 1886 does require that the State, as purchaser, shall take *actual possession* of property so purchased by her. Hence, I conclude that, in as much as the Legislature has seen fit to impose this additional restriction on the State, when she becomes a purchaser, the tax debtor, whose property she buys, has a right to require it of her; and that her failure to take possession can be urged against her or those holding under her, as an estoppel counteracting the bar of this Statute.

The present case differs from the Smith case in this, that the plaintiff in that case purchased *prior* to the Act of 1886, and the plaintiff in this case purchased *afterwards*.   On this statute the plaintiff had a perfect right to rely; and as the State had not taken possession of the property anterior to the plaintiff's acquisition of a title to it from the tax debtor, the inchoate condition of the title of the State enables the plaintiff to employ it as an estoppel against her vendee's plea of prescription.

This construction of the Act of 1874, is analogous to that we placed upon it in Surget vs. Newman, 42 An. 777, in which we said, substantially, that in applying the prescription Act 105 of 1874, to an action to invalidate a title to property purchased at tax sale, it is the province of this court to see to it that the sale was made under and by virtue of *some* law of this State, which authorized the *sale proceeding*.

In Barrow vs. Wilson, 39 An. 403—the first adjudicated case in which this prescription was recognized and applied—we likened it to the prescription provided in R. C. C. 3543, against all informalities connected with, or growing out of, judicial or public sales. It is not, correctly speaking, the prescription *acquirendi causa*, one of the essentials of which is possession; but by the Act of 1886 *possession* has been made an essential condition to the acquisition of *title* by the State, and it must be so as to a plea of prescription in her behalf, or that of her vendee. This prescription runs not againt an *action* simply, but against an "*action to invalidate*" titles acquired at tax sales.

BERMUDEZ, C. J., concurs.

### ON APPLICATION FOR REHEARING, AND RULE, ETC.

WATKINS, J. Our opinion was handed down on Monday, December 15, 1890, and a written application for rehearing was filed by counsel of record for the defendants.

On the 9th of January, 1891, plaintiff's counsel applied for a rule on the defendants to show cause, on a day designated, why a decree of this court should not issue, on the ground that same had become final, because the application for rehearing was unaccompanied by a *printed* statement of points and authorities on which same is founded; and because no extension of time to file same was applied for, as required by Rule IX of this court.

Contemporaneously therewith defendants filed a motion for a like rule on plaintiff to show cause why the cause should not be remanded to the lower court, with instructions to receive certain alleged newly discovered evidence material to their interest.

As these are interlocutory proceedings which must be disposed of in advance of the main question, the granting *vel non* of the defendant's application for a rehearing, we have thought it expedient to treat, and dispose of them *seriatim*.

I.

To plaintiff's rule defendants original counsel answered that the reason he did not file a *printed* statement of points relied upon in his application for a rehearing, accompanied by a list of authorities, was that he relied for a rehearing *exclusively* upon points made, and authorities cited in his original printed briefs on file, and to which he merely referred, inviting the attention of the court to them in his application.    That before the expiration of the legal delays for filing an application for a rehearing, time was granted by the court to an *amicus curiæ* to prepare and file a printed brief and argument in support of the application for rehearing he had already filed; and that said *amicus curiæ* did prepare and file such a printed brief in this cause, on the 3rd of January, 1891.    That defendant's counsel conferred with said *amicus curiæ*, on the day his application for time to print and file briefs was granted; and that they agreed upon the line of argument and authority the latter should therein pursue.

To this answer is appended the affidavits of counsel for the defendants, as well as of the *amicus curiæ*, fully substantiating the statement in the aforesaid answer.

It seems to us that the spirit, if not the letter of the rule invoked, has been pursued.

Printed briefs are what the rule requires, and they were furnished and filed several days in advance of plaintiff's rule to show cause.

They gave the court fullest details of the evidence and argument on which defendants relied, and nothing further was required or necessary.    To hold otherwise would be to make rules of convenience, unnecessarily harsh and oppressive.    We are of opinion that our rules should receive a liberal construction, and so construing them, we think the defendant's answer ample and justifies our refusal to make plaintiff's rule absolute.

II.

In so far as the defendant's motion to remand is concerned, we think it entirely out of time.    While it is quite true that the judgment is not yet final, and that it is always within the power of the court, in appropriate cases, to remand causes for the purpose of enabling parties to adduce new evidence, yet application for relief *must* be made on the original hearing of the cause, and come well supported by reasons justifying its allowance.    Louisiana Ice Manufacturing Company vs. City of New Orleans, 43 An. —

But we are not aware of any precedent for such relief being granted on an *ex parte* showing made as a supplement to an application for a rehearing. Even if this right be conceded, and the materiality of the newly discovered evidence, also, the affidavits which are appended to the motion, make no averment of *any* diligence on the part of the defendants to obtain this evidence, which is alleged to have just been discovered.

This evidence is said to consist of an exemplification from the tax records in the office of the Comptroller of the City of New Orleans, and certainly it was quite as accessible to defendants at the time of the trial in the District Court, as it would be on a second trial.

If we should adopt the rule suggested in defendant's motion, in our opinion serious inconvenience, if not injury, would inevitably result. It would tend to the destruction of certainty in judicial proceedings, and to render litigation practically interminable.

We deem it to be our duty to hold all litigants to a just observance of *due* diligence.

The application to remand is without merit. It should not, properly, have been considered until after the application for a rehearing had been disposed of, but as we believed that it could not be allowed in any event, and as it was put as a preliminary proposition, we thought best to couple its consideration with that of plaintiff's rule to show cause.

### III.

Defendant's application for a rehearing rests on four grounds, viz:

1. That our opinion is in error in holding that because plaintiff alleged that the tax for which the land was sold was at the time prescribed, there was no necessity for him to have made a previous tender of the price of adjudication.

2. That it was error to hold that there was no "notice" preceding the tax sale.

3. That it erroneously failed to pass on his reconventional demand.

4. That our opinion should have passed upon and sustained their plea of five years' prescription.

It is unnecessary for us to enter into a detailed discussion of these points separately, or to present an elaborate statement of our views in refusing the motion. It is sufficient for us to say that the provisions of Article 210 of the Constitution do not seem to contemplate a "*previous* legal tender" of the price

of adjudication being made — such as is contemplated in C. P., 404, *et seq.*, and R. C. C., 1933, *et seq.*, and 1911, *et seq.* — as a condition precedent to the institution of the suit for rescission of the sale. It declares: "No sale of property for taxes shall be annulled for any informality in the proceedings until the price paid, with 10 per cent. interest, be tendered to the purchaser." Const. Art. 210.

We think the tender may be made at any time prior to the rendition of final judgment decreeing the nullity of the sale; or the price may be adjusted and liquidated in the judgment. Certain it is that the constitutional mandate must be carried into effect, and the tax purchaser must be compensated, and the judgment annulling the sale can not be completed until that is done.

On inspection of the record we find that the defendants urged, amongst other exceptions, the prescription of three and five years; the former against the plaintiff's action to annul a tax sale, and the latter against the alleged informalities in the sale, and especially against the want of notice required by the 210th Article of the Constitution.

In the application for rehearing the former is not insisted upon, but the latter is.

The authentic act of conveyance to the State, by the State Tax-collector of the property in question, bears date 17th of January, 1885, and this suit was filed on the 1st of May, 1890, more than five years having intervened between those two dates.

The provisions of R. C. C., 3543, are that "all informalities connected with, or growing out of *any* public sale, made by *any* person authorized to sell at public auction, *shall* be prescribed against by those claiming under such sales, after the lapse of five years from the time of making it, whether against minors, married women, or interdicted persons."

Defendant, Negrotto, Jr., acquired an authentic title to this property from the State, on the 19th of August, 1889, and it is these titles the plaintiff seeks to annul, and under which he, as defendant, claims.

He demands judgment recognizing him as owner, and putting him in possession of same thereunder.

It is perfectly clear that if this plea of five years' prescription is applicable, it must be sustained.

In *Person* vs. *O'Neal*, 32 An. 237, our predecessors said this pre-

cription was not applicable to such an informality in a tax sale, as the absence of the *notice* required by the Constitution, and which is the same notice under consideration in this case. But in *Barrow* vs. *Wilson*, 39 An. 410, that decision was overruled, and in so doing, we said: "We are also referred to the case of *Person* vs. *O'Neal*, 32 An. 237, where the court said, in commenting on the statute: ' Whatever defects in a tax sale may be cured by the lapse of three years, the want of *personal notice* to the owner, or his agent or curator, can not be, because such notice is a condition precedent to the seizure, without which there could be no sale.' We are compelled to overrule this decision. It is in direct conflict with a former decision which held that even under Article 3543, C. C., want of such notice was a relative nullity cured by the lapse of five years." *Allen* vs. *Couret*, 24 An. 24; *Mulholland* vs. *Scott*, 33 An. 1045.

There is no question of the fact that between our opinion in the instant case, and that in Barrow vs. Wilson, there is a conflict which can not be reconciled; and it is, therefore, inevitable that one must yield. After a most careful and serious consideration, we have deliberately reached the conclusion that the views expressed in Barrow vs. Wilson ought to be modified so as to conform to the views expressed in the opinion now under consideration. In treating of, and applying the prescription of three and five years, in that case, this court recognized the decision as a departure from the theretofore settled course of judicial construction to the contrary, but deemed the application of the Act of 1874 an absolute necessity in order to give a *quietus* to the agitation of tax suits. Hence we were not, on the spur of the moment, prepared to consider all of its ultimate bearings and consequences. Indeed, in overruling Person vs. O'Neal, we were guided by a decision by our predecessor in Allen vs. Couret, 24 An. 24, and one of our own, subsequent in date, in Mulholland vs. 33 An. 1045; both of which justified our action in so doing. Not Scott, until this case arose, was our attention attracted to the fact that the notice required as a condition precedent to the seizure of property of a delinquent tax payer was founded upon a constitutional requirement, the absence of which could not be considered as a relative nullity which may be cured by the prescription of three, or five years.

Hence our opinion in Barrow vs. Wilson was error, to the extent

of holding that, in respect to this notice, the prescription of three and five years was tenable.

Making this concession and alteration will have the corresponding effect of reviving and giving force and effect to Person vs. O'Neal. This will align Barrow vs. Wilson with the principles announced In the matter of Orloff Lake, 40 An. 143, and *In re* Douglass, 41 An. 765. Having amended and altered our opinion in Barrow vs. Wilson so as to harmonize with the constitutional requirement with regard to notice to the tax payer, and with this opinion, the application for a rehearing must be overruled.

It is therefore ordered and decreed that the judgment appealed from be so amended as to allow the defendant and appellant, Domingo Negretto, Jr., on his reconventional demand, the sum of $102, with the constitutional interest of 10 *per centum* from the 19th of August, 1889, and all costs of both courts; and that, as thus amended, our judgment remain undisturbed.

Rehearing refused.