IN THE

# SUPREME COURT

OF

# OREGON

Argued March 18, decided May 25, 1909.

## BRADFORD *v.* DURHAM.

[101 Pac. 897.]

TAXATION—SALE OF LAND FOR TAXES—EXHAUSTION OF PERSONALTY—
DEFECTS INVALIDATING SALE.

1. Failure of the sheriff to annex to his return of delinquent taxes on lands the affidavit that he can find no goods to satisfy the same, as required by Section 2811, Hill's Ann. Laws 1892, renders the sale and the deed based thereon void.

TAXATION—ASSESSMENT—DESIGNATION OF OWNER.

2. Land should be assessed to the holder of the apparent legal title, as required by Section 3057, B. & C. Comp., and an assessment to one not the owner is void.

TAXATION—ASSESSMENT—DESIGNATION OF OWNER.

3. An assessment of a tract of land at a lump sum to one who owns only a part of it is void.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW.

4. A statute making a tax deed conclusive evidence of the regularity of the tax proceedings is unconstitutional, as depriving the owner of property without due process of law.

TAXATION—TAX TITLES—TAX DEEDS—RECITALS—"SUBSTANTIAL STATE-
MENT."

5. A tax deed based on an assessment to "Priscilla Durham," which recites that the land was assessed to "Petruella Durham," is not a "substantial" statement of the assessment within the requirements of Section 3127, B. & C. Comp., defining the effect of tax deeds as evidence.

ESCROWS—UNAUTHORIZED DELIVERY.

6. A deed left in escrow, which is improperly delivered by the depository without compliance with a condition requiring payment of the consideration named, passes no title.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by W. H. Bradford against Petruella Durham and others, to determine an adverse claim to real property. The complaint states that the plaintiff, W. H. Bradford, is the owner in fee and entitled to the possession of the southwest $\frac{1}{4}$ of the northwest $\frac{1}{4}$, the northwest $\frac{1}{4}$ of the southwest $\frac{1}{4}$, and the south $\frac{1}{2}$ of the south $\frac{1}{2}$ of section 36, in township 23 south of range 3 west of the Willamette Meridian, in Douglas County, which land is unimproved and not in the possession of any person, and that the defendants, Petruella Durham, Wilson H. Stubbings, Samuel Handsaker, and Samuel Hunsaker, claim some right, title, or interest in the premises adverse to the plaintiff, but that such assertion is without right. The prayer is that the defendants be required to set forth the nature of their alleged claim, and that it may be decreed invalid.

The defendant Mrs. Durham and the defendant H. E. Noble, who, by order of the court, was made a party in place of Samuel Handsaker, severally filed answers denying the averments of the complaint, and alleging that each was the owner in fee simple of the real property specified, and entitled to the possession thereof. For a further defense Noble averred that plaintiff's alleged assertion of right to the premises was derived from a pretended sale and conveyance for the payment of delinquent taxes, and that such proceedings were void. The other defendants made default.

After replies had placed in issue the allegation of new matter in the answers, the cause was tried and the suit dismissed, but, as to all the other parties, it was determined that Noble was the owner in fee of the land. From this decree the plaintiff appeals.      MODIFIED.

For appellant there was a brief over the names of *Mr. John A. Buchanan* and *Messrs. Veazie & Veazie,*

with oral arguments by *Mr. Buchanan* and *Mr. J. C. Veazie.*

· For respondent there was a brief over the names of *Messrs. Coshow & Rice,* with oral arguments by *Mr. Oliver P. Coshow* and *Mr. John M. Gearin.*

Opinion by MR. CHIEF JUSTICE MOORE.

The evidence shows that on September 24, 1894, the State of Oregon executed to the defendant Samuel Handsaker a deed to the land described in the complaint; that at that time he was the agent of Charles Hamlin, for whom he took the legal title in trust, and to whom he soon thereafter conveyed all his interest in the premises, but that the deed to Hamlin was never recorded; that the land was assessed for the year 1895 to Handsaker, but, as the taxes imposed had not been paid, the sheriff on August 3, 1901, sold the premises to Douglas County, which on January 28, 1903, received a tax deed therefor; that, pursuant to an order of the county court, the county judge on March 16, 1903, executed a deed of the land to Frank E. Alley, from whom the plaintiff herein acquired the alleged title by mesne conveyances. In the year 1900 all of section 36, except the southwest ¼ of the southwest ¼ thereof, in township 23 south ·of range 3 west of the Willamette Meridian, was assessed to Priscilla Durham, but, the tax thereon not having been paid, the sheriff sold the land February 24, 1902, to Z. L. Dimmick, who assigned all his interest in the purchase to the plaintiff herein. The sheriff on January 30, 1905, executed to the plaintiff a deed of the premises last described, in which instrument it is asserted that the land "was duly assessed for the fiscal year 1900 to Petruella Durham." After this suit was commenced, Handsaker, for the expressed consideration of $100, signed and acknowledged a quit-claim deed purporting to convey all his interest in the premises described in the complaint to the defendant Noble. This deed was deposited with a bank in Portland, to be delivered upon

the payment of the consideration, and, by paying to Handsaker's son the sum of $10, Noble secured possession of the deed and caused it to be recorded.

1. It will be seen that the plaintiff's title to the land is based upon two tax deeds, the validity of which depends upon a compliance with the terms of the statute in force when the proceedings were instituted and consummated. In the year 1895, when the land was assessed to Handsaker, and until February 27, 1901, when the law was repealed (Laws 1901, p. 250), the sheriff, to whom was delivered the tax roll with a warrant attached, was required to make out a statement of the taxes remaining unpaid and to annex thereto an affidavit that he had not, upon diligent inquiry, been able to discover any goods or chattels belonging to the persons charged with such unpaid taxes whereon he could levy the same. Such a statement and affidavit was then to be filed with the county clerk. Hill's Ann. Laws 1892, § 2811. A copy of that part of the roll which should contain the sheriff's affidavit shows that he failed to subscribe his name to the written declaration, and neglected to take the required oath. Under the law then operative, the enforced collection of the sum annually imposed on land for the maintenance of the state, county, and municipal government was primarily by a levy on, and a sale of, personal property belonging to the person whose land was charged with the unpaid taxes. A resort to the real estate taxed to satisfy the demand could be had only when the required affidavit was annexed to the sheriff's return, upon the filing of which in the clerk's office a warrant could be attached to the delinquent roll, commanding and authorizing a sale of the land. A compliance with the requirement of the statute, in the particulars indicated, was a condition precedent to the levy on, and sale of, land for the collection of the unpaid taxes, and, as the possession of goods or chattels by the alleged owner of the land is not negatived, the sale of the real property to satisfy

the tax for the year 1895 was a nullity; and the deed executed pursuant to such sale is void. *Hughes* v. *Linn County,* 37 Or. 111 (60 Pac. 843).

2. It will be remembered that all of section 36 in township 23 south of range 3 west, in Douglas County, except the southwest 40 acres, was assessed for the year 1900 to Priscilla Durham. The description of the entire tract of land so assessed for that year includes all the real property specified in the complaint, except the southwest $\frac{1}{4}$ of the southwest $\frac{1}{4}$ of that section. The evidence discloses that at the time such assessment was made the State of Oregon was the owner of 360 acres of land in section 36 of that township and range, to-wit, the northeast $\frac{1}{4}$, the east $\frac{1}{2}$ of the northwest $\frac{1}{4}$, the northwest $\frac{1}{4}$ of the northwest $\frac{1}{4}$, the northwest $\frac{1}{4}$ of the southeast $\frac{1}{4}$, and the northeast $\frac{1}{4}$ of the southwest $\frac{1}{4}$, but that on December 14, 1903, the State conveyed such land to L. I. Johnsted and A. J. Danson. The statute in force in the year 1900, when the second assessment was made, required the assessor to assess all taxable property within his county, and to return to the county clerk on or before a specified day the assessment roll, with a full and complete assessment of such taxable property entered therein, "including a full and precise description of the lands or lots owned by each person therein named." Section 3057, B. & C. Comp.

3. An examination of the transcript fails to disclose any legal evidence tending to show that Priscilla Durham or the defendant Petruella Durham ever owned any part of the land described in the complaint. The defendant Samuel Handsaker in the year 1900 held the apparent legal title to such real property, and his obvious ownership would have been revealed by a search of the records of deeds of Douglas County. So far as disclosed by the transcript, he was the only person who could legally have been assessed with the land. *Lewis* v. *Blackburn,* 42 Or. 114 (69 Pac. 1024) ; *Martin* v. *White,* 53 Or. 319

(100 Pac. 290). When lands are assessed at a lump sum to a person who owns only a part of the real property described on the roll, he cannot determine the amount of tax he is required to pay, and such assessment is a nullity. *Strode* v. *Washer,* 17 Or. 50 (16 Pac. 926) ; *Title Trust Co.* v. *Aylesworth,* 40 Or. 20 (66 Pac. 276).

4. The statute provides, in effect, that a tax deed shall contain a specification of the property sold, as described in the assessment roll, and shall state to whom the land was assessed, which deed shall be *prima facie* evidence of certain facts and conclusive evidence of other facts; and in all suits involving the title to real property held by virtue of a tax deed, "executed substantially as aforesaid," the person claiming the right of possession adverse to the title conveyed by the tax deed must, in order to defeat such title, prove the invalidity of the tax proceedings. Section 3127, B. & C. Comp. This enactment is invoked to uphold the tax titles in the case at bar. The legislative assembly is powerless to make a tax deed conclusive evidence of the regularity of the tax proceedings, for to sanction such a rule would permit a violation of the fourteenth amendment of the Constitution of the United States, which forbids a state to deprive any person of property without due process of law. *Harris* v. *Harsch,* 29 Or. 562 (46 Pac. 141).

5. The tax deed, based on the second assessment, was not executed "substantially" as required by the statute; for, while the assessment roll shows that the land was listed as the property of Priscilla Durham, the tax deed falsely asserts that the real property "was duly assessed for the fiscal year 1900 to Petruella Durham." If, therefore, the rule of conclusiveness could be invoked in any case, it would not, for the reason stated, be applicable herein. Both attempts to divest the title to the land by the tax proceedings were ineffectual; and the tax deeds are void.

6. We believe, however, that an error was committed in decreeing that the defendant Noble was the owner of

any part of the land described in the complaint. He holds what purports to be a legal title to the premises which he apparently secured by Handsaker's deed. This instrument was deposited in escrow, to be delivered when the grantee therein named paid $100, the expressed consideration therefor. He paid on account thereof only $10, and obtained the deed from Handsaker's son. Noble testified that he presumed the person who secured the deed from the bank and gave it to him had sufficient authority to justify his act. If the right of an agent to act for his principal could be established in such manner, without any evidence of his possessing, in other instances, sufficient power to authorize the delivery of the deed, this presumption is overcome by the testimony of Samuel Handsaker, which shows that he never empowered his son so to act, or ratified his conduct in any manner. There was, in our opinion, no delivery of Handsaker's deed; and, this being so, Noble has no title whatever to the premises. *Tyler* v. *Cate*, 29 Or. 515 (45 Pac. 800).

The decree will therefore be modified as to the defendant Noble, and the suit dismissed as to all parties; each being required to pay the costs and disbursements which he incurred in both courts.          MODIFIED.